(July 26, 1965)
Jacob Markowitz, J.
After reading the compliance reports and after hearing argument on June 23, June 30, July 13, and July 26, the court directs the next apprenticeship class of 65 apprentices to be established on October 30,1965. All interested parties are forthwith directed to comply with the foregoing.
*245 (August 2, 1965)
On July 26,1965, an order was issued in this proceeding directing the respondents to commence a second apprenticeship class of 65 apprentices on October 30, 1965. This was reluctantly done in light of the history of this proceeding, in which, by means of co-operation and mutual understanding by all parties, standards were adopted for the achievement of equal opportunity in the sheet metal industry regardless of background or ethnic origin. [43 Misc 2d 958.] Therefore, an opinion explaining the order of July 26 is deemed warranted.
After the institution of this proceeding by the State Commission on Human Eights, the parties concerned herein — union, management, and the State of New York — agreed to resort to the device of conciliation around the conference table to negotiate a solution, rather than pursue the avenues of controversy in the courtroom arena. The court, in the public interest, agreed to lend itself to this method of resolving the problem, and after a long series of meetings and discussions a result consistent with public policy against discrimination was reached. In its pronouncements on this matter, the admiration and appreciation of the court for the spirit of co-operation shown by all sides was expressed.
During the long hours of discussions and negotiations in this matter, it was understood by all that it was only through a properly and fairly administered apprenticeship program that the goal of equal opportunity can be achieved. Aside from the standards adopted, it was agreed that the apprenticeship program would be immediately implemented by the institution of two apprenticeship classes a year. After some initial delay, the first class was instituted in March, 1965. The second 1965 class was contemplated to be held in -September. It now appears that while the September, 1965 class is due to begin, nothing has been done to take or process applications for this class, necessitating the July 26, 1965 order of the court directing commencement of a class by October 30, 1965. This failure is due to a unilateral determination by the union and its officers that the economy of the industry at this time does not warrant expansion of its labor force. Since by the terms of the original order jurisdiction over this matter had, by consent, been continued with the court, it was incumbent upon the parties to expeditiously bring this matter to the court’s attention.
After an impressive beginning and an arduous year of painstaking endeavor we once again seem to face the obstacle of the entrenched members of a union raising barriers for fear of losing their employment.
*246 While regrettable, if true, nevertheless this age-old argument may not be used to perpetuate a malignant system of discrimination against racial minorities and the economically oppressed. Discrimination against minority groups is against the public policy of this State and Nation. It cannot be justified and will not be tolerated for any reason. The fears of the current union membership for their economic future must be assuaged by other means than by suppressing the economically oppressed.
The court recognizes that the experience with the first class has been disappointing in that an insufficient number of members of minority groups have qualified for apprenticeship training. This is due, undoubtedly, to faulty educational backgrounds which inhibit many prospective trainees from economic advancement.
Legislative fiat, judicial decree, public pressure are essential ingredients in the protection of civil rights for all. They are meaningless, however, unless economic opportunities are recognized as a concomitant part of civil rights. The major portions of the ill-fed, ill-housed, ill-clothed segments of our society are unfortunately and understandably indifferent to the over-all civil rights problem so long as basic economic needs remain unsatisfied. This condition will not change, however, until something is done to elevate their situation and place them in their rightful strata in the various fields of employment, so that they may compete on equal terms with all other citizens.
In line with the national antipoverty drive, various programs have been instituted to achieve this desirable result. It is urged that utilization of whatever device is available by means of the antipoverty program be resorted to, so as to help raise the economically oppressed to the educational level requisite for qualification in the sheet metal apprenticeship program.
As this court has indicated in the past, the establishment and advancement of equal opportunities, including economic opportunities, is not only the function of labor and management but of government itself. In the instant proceeding, the State agency involved herein seemed to have regarded its functions completed once the initial order was entered. This is contrary to the philosophy of Thomas Jefferson that the care of human life and happiness is the first and only legitimate object of good government. The attitude that action cannot be taken without a formal complaint is archaic.
It is urged that all parties pursue a course to accomplish the ends they originally professed to embrace and which, by mutual consent, were embodied in the order.
While the court’s jurisdiction is continuing, it is hoped that the utilization of its powers might be minimal,