Jacob Markowitz, J.
The respondent union herein has requested reconsideration of the July 26, 1965 order of this court directing commencing of a second 65-member apprenticeship class by October 31, 1965, and seeks instead permission to lower the figure to 30. (Initially it unilaterally suspended the second class completely and ignored the mandated September commencement date therefor.) The request is made on the alleged ground that members of the union are currently unemployed and that therefore the union should not be forced to absorb additional members.
As was pointed out in the August 2, 1965 opinion of this court (47 Misc 2d 244) the arrangement for 2 apprenticeship classes *800 of 65 each for the year 1965 was reached by agreement of all of the parties involved. The figure of 65 was not arbitrarily arrived at. It is the crystallization of many considerations after both union and management availed themselves of their collective bargaining machinery and assessed the prospective economic conditions of the industry.
While the court felt, at the time, that this number was insufficient for the immediate integration of the union, the interests of conciliation and the necessity of engineering a realistic inroad by minority groups into the sheet metal labor force as soon as possible seemed to mandate an attitude of deliberate speed rather than disorganized haste. Now, having gone this far, the union, unilaterally, is attempting to halt or severely limit the process of its legally required integration on a claimed ground of unemployment in its racially homogeneous ranks.
The underlying basis of the court’s involvement in this matter is the undisputed fact that the denial of economic opportunities on racial or ethnic grounds to otherwise qualified individuals is repugnant to our Federal and State Constitutions, and, therefore, unlawful. The union here involved has been found to have a history of over 100 years of such exclusion. Having been confronted with its unlawful conduct, it agreed to set up and be bound by standards for fair apprenticeship procedures, rather than wait for a judicial mandate to force its compliance with the law. Now, at this stage, after having had an initial class, it refuses, except for token gestures, to further the integration process at this time on economic principles. It is the opinion of the court, however, that in view of this union’s past practices of racial discrimination and unreasonable exclusiveness, its refusal to proceed with this program is ill-behooved. Were it a fairly integrated union, the suspension of its apprenticeship program when the individual picture so indicates might be permissible since its result would be nondiscriminatory. But where a union already guilty of exclusionary practices, and which has not yet integrated its membership seeks to suspend or curtail a program which ultimately will bring it into compliance with the law, on the ground that the heretofore favored might thereby suffer competition, it is analogous to the legendary defendant convicted of patricide who seeks clemency on the ground that he is an orphan.
The argument advanced that the promulgation of the. now existing standards for an apprenticeship program on a nondiscriminatory basis evidences full compliance by the union of the order of this court, since it binds it to fair employment practices upon any future resumption of the apprenticeship *801 program, is specious and must be rejected. Discrimination is unlawful now. It does not become less unlawful merely because its perpetrators unilaterally decide that its abolition might discomfort them. As was pointed out in an earlier opinion in this matter, fears of unemployment must be assuaged by methods other than unlawful discrimination. When ultimately the union is fully integrated within the requirements of the law, the question of suspension of membership applications, when appropriate, would be an internal or collective bargaining matter not within the jurisdictional limits of the present court structure. Until such time the union cannot continue outside the pale of the law under a shield of sophistic economic arguments.
The further argument by the union that the court in implementing its order exceeded its jurisdiction is not borne out by the record. As was previously pointed out, not only was the figure of 65 stipulated to by all parties — including the union — but the stipulation also provided for continued jurisdiction over this matter in the court. (See Matter of State Comm. for Human Rights v. Farrell, 43 Misc 2d 958, 969, 977.)
However, despite the stipulation the court is convinced that, upon the clear finding of the practice by this union of unlawful discrimination, it has both the authority and solemn duty to wield its power reasonably to effectuate its orders. The application is denied.